NEW JERSEY DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

THERESA H. BOLOS, petitioner,

*v.*

TRENTON FIRE CLAY AND PORCELAIN COMPANY, respondent.

**Employe Killed While Riding on Running-Board of Employer's Truck—Question of Right on Truck—Accident Occurred While on Way to Resume Work After Noon Hour—Question of When Employment Begins—Question of Fault of Employe.**

*Mr. Herbert W. Backes,* for the petitioner.

*Mr. Aaron V. Dawes,* for the respondent.

This is a claim coming up for determination under the provisions of the New Jersey Workmen's Compensation act of 1911, and subsequent amendments, in which a statement of the facts are about as follows:

On and previous to May 8th, 1924, the petitioner's husband was employed by the Trenton Fire Clay and Porcelain Company, a subsidiary of the J. L. Mott Company, as a helper on one of its trucks used chiefly in work about the

yards of the plants. These trucks were nightly housed in a garage on the property of the J. L. Mott Company, and behind or near the garage, on the same property, was a stable where, according to the testimony, some of the men were accustomed to eat their lunches. The garage was a short distance removed and on the opposite side of the public street from the gateway, giving entrance to the yard of the respondent's plant.

The driver of the truck, on which the decedent was helper, stated that when the noon whistle blew he understood his asistant to say he was going home for dinner. The widow, however, testified that he did not come home, but that their daughter, as was her custom, took her father's lunch to him at the stable. This phase of the matter is unimportant, since the chauffeur of the truck, from which the decedent fell, tes-tified that about the time of the blowing of the whistle terminating the lunch hour he saw the petitioner's husband coming from the stable to the garage, where he mounted the running-board of the truck that this chauffeur was driving, for the purpose of riding to the other yard, where he had left the car on which he worked when the noon whistle blew. Claim is made by the respondent that in so doing the decedent disobeyed orders relative thereto. This contention is without merit in view of testimony by the assistant executive manager that the order consisted of the posting of printed notices some years previous to this occurrence, and that he could not state whether or not at this time these notices are still in evidence. There is no evidence to show that the decedent could read the English language, or that he had ever been personally instructed not to ride on the running-board of a truck. Indeed, there was direct testimony that men have at times ridden on the running-board of various trucks. Little weight can be given to this contention, especially in view of the decision in the case of *Kloaszynski* v. *Klie, 102 Atl. Rep. 5.*

Resuming the statement of the facts in this case, it appears that the truck, on the running-board of which the decedent

was riding, left the garage, traversed the street to the entrance to the yard where the decedent's truck had been left, and that at the moment when the truck turned to enter the gate the decedent lost his hold or was thrown by centrifugal force from his position to the pavement, inflicting injuries from which he shortly died. It is established that the whistle to resume work had blown before the occurrence of this accident.

With regard to the legal phrases of this case, it can be said with assurance that an employe's employment begins after each recess, when he again comes under the jurisdiction of the employer. It can also be accepted that an employe comes under the jurisdiction of the master the moment he steps on the premises of his employer. No employer would, for a moment, subscribe to any other theory. In the present case, if the grounds on which the garage stood was not owned by the subsidiary company who employed this man, the fact remains that the trucks were kept in this garage, which fact not only gave him rightful entrance to this place, but actually required him to go there in order to begin his day's work. Furthermore, these employes had every reason to believe, and no means of knowing otherwise, than that all the property above mentioned belonged to the concern for which they worked. Fairness to this widow and the dependent children must dictate the finding that the deceased was on the property owned or controlled by his employer when the whistle sounded for work. That he was not at the exact point where he was expected to be at that moment is a matter which, it seems to me, rightfully belongs to the disciplinary function of plant management, and should have been so dealt with by the officials had the employe remained within reach. Unfortunately, this cannot now be done. To attempt so to do would be to raise the question of fault as a determining factor. Manifestly, this would be unjust, as in no case can fault on the part of the employer subject him to a greater liability than that fixed by the statute. The loss of an arm by a circular saw which an

employer has negligently left without the guard actually required by law, cannot react against said employer for an amount greater than the scheduled compensation. That being so, fault on the part of the employe cannot, in justice, be an excuse for penalizing the employe. A prime *desideratum* of the Compensation law is the elimination of fault as an element of a case. Where a plant or company property is situated on both sides of a street, it must be conceded that the employe's employment does not cease while he is proceeding from one such place to the other. The exact point of an accident under these conditions is irrelevant. This reasoning at once disposes of the contention of the respondent that this employe was not where he should have been, and that he was riding on the running-board of a truck, and brings us face to face with the necessity of issuing an award in favor of the petitioner and her dependent children. An order will be drawn up accordingly.

W. E. STUBBS,
*Deputy Commissioner of Compensation.*